Aultman & Co. v. Graham.

## C. AULTMAN & Co.
### v.
## HUGH GRAHAM.

*Negotiable Instruments—Note—Surety—Settlement—Error in Computation—Receipt in Full—Correction—Distinction between " Error" and " Mistake"—Instructions.*

1.  Mutuality in error is not essential to the right of correction.
2.  In an action to recover from the surety a balance due upon a note, a mistake having been made and a receipt in full given upon payment of less than the correct amount, it is *held:* That a recovery should be had for the balance rightfully due ; and that an instruction given for the defendant was improper.

[Opinion filed May 25, 1888.]

APPEAL from the Circuit Court of McLean County; the Hon. O. T. REEVES, Judge, presiding.

Messrs. RAYBURN & BARRY, for appellant.

In the light of Graham's testimony both parties acted under a misapprehension of the facts. This misapprehension being mutual, there was no compromise. Easton v. Strother, 57 Iowa, 506 ; Town v. Wood, 37 Ill. 512.

If appellant's attorney made a mistake when he offered to give a receipt in full for $79.42, it is not bound by that receipt. Eddie v. Eddie, 61 Ill. 134; People v. Cooper, 10 Ill. App. 384; Easton v. Strother, 57 Iowa, 506.

A receipt purporting to be in full of all claims may be varied, explained, or contradicted by parol testimony. Ditch v. Vanhardt, 82 Ill. 134; 1 Greenl. Ev., Sec. 305.

This is not an action to reform a contract. It seeks to recover the balance due on an entire debt, only part of which, by a miscalculation, was received. The mistake need be made by only one of the parties, and, having been made, whichever was the loser thereby may recover. Eddie v. Eddie, 61 Ill. 134; Town v. Wood, 37 Ill. 512; People v. Cooper, 14 Ill. App. 384; Bishop on Contracts, Secs. 313, 703.

Defendant's fifth instruction assumes as a matter of fact that defendant, Graham, knew there was a dispute between the Douthetts and appellants. It also informs the jury that if Graham accepted in good faith the offer of settlement as a compromise of a claim he believed to be in controversy between other parties and appellant, he was entitled to a verdict. This is not the law. The offer to settle must be as a compromise of a disputed claim, as well as the acceptance of the same. To support the view that this settlement was a compromise of a disputed claim, it must appear from the record that the offer to settle was made as a compromise. The appellant proved it made a mistake and did not offer a compromise. Graham, claiming payment as a compromise, the burden of proof was upon him. American v. Rimpert, 75 Ill. 228.

Messrs. FIFER & PHILLIPS, for appellee.

A sum paid in settlement of a larger disputed claim is a bar to suit for balance; and a written receipt in full is evidence of the highest and most satisfactory character, which can only be overcome by the most convincing proof. Rosenmueller v. Lampe, 89 Ill. 212, and cases cited.

In this case no mutual mistake is shown. Graham made the contract he meant to make; and appellant is seeking relief in a court of law against its own negligence.

We are not disputing the proposition that where two persons contract under a mutual mistake of fact, such mistake may be relieved against in equity. There was here no mutual mistake, and this suit is not in equity. Under the authorities cited by appellant, the mistake must be common to both parties in order to avoid the contract.

Appellant, by permitting the removal of the mortgaged property, released Graham. Kirkpatrick v. Howk, 80 Ill. 122; Rogers v. School Trustees, 46 Ill. 428; Springer v. Toothaker, 43 Me. 381; Ferguson v. Turner, 7 Mo. 497; Commonwealth v. Miller, 8 S. & R. 452; Baker v. Briggs, 8 Pick. 121; N. H. Savings Bank v. Concord, 15 N. H. 119.

PLEASANTS, J. In August, 1882, Graham, as surety, signed, with R. H. & J. Douthett, five promissory notes to Aultman & Co., a manufacturing corporation of Canton, Ohio, for a steam threshing rig, which were secured by mortgage on the machine and five horses. The Douthetts removed to Dakota, taking the mortgaged property with them. They paid the first of these notes, and Graham, after their removal, paid the second. When the mortgage expired, in August, 1884, a new one was executed by the Douthetts in Dakota, upon the same property, and five additional horses. In the spring of 1886 it was foreclosed, but the proceeds were insufficient to pay the two remaining notes in full. Thereupon, on the 13th of April, J. O. McMath, appellant's attorney, wrote to Graham communicating the result reported, that the net proceeds amounted to $593.64, leaving a balance due of $127.36, with interest from April 6th, and asking if, as surety, he would not prefer to pay it at once, rather than require the company first to obtain, at useless cost, a judgment against the principals. On May 4th he wrote again, referring to his previous letter as still unanswered, and correcting an error therein. He says he omitted to include attorneys' fees for foreclosing, in the costs, which reduced the net proceeds to $541.30, and left a balance of $179.70.

In the meantime Graham had informed his attorneys and also Messrs. Holder, Milner & Co., appellant's agents at Bloom-

ington, of the receipt and contents of the first, and told them he would not pay until he should see a certified copy of the mortgage, and an itemized statement of the expenses of foreclosure. They so informed appellant by letters addressed to appellant, but which did not reach its attorney until May 8th. On that day he inclosed to its said agents copies of all the notes, with the credits indorsed, and of the constable's certificate of the mortgage sale, with a statement of the expenses, showing gross proceeds $668, and expenses $74.36, leaving net proceeds $593.64, and wrote that after his first letter to Graham he was informed by his correspondents that the statutes of Dakota allowed attorneys' fees in such a case to be charged against the mortgagor, and that $50 had been so charged in this, and that therefore he insisted on the corrected balance, and would proceed to judgment unless Graham would pay it. Deducting this fee also, the amount to be credited would be $543.64, which was, in fact, indorsed on the two notes. At the same time he wrote also to Graham, and to his attorneys, to the same effect, referring them to the copies of papers so sent to Holder, Milner & Co. He had no copy of the mortgage, and the original was in the recorder's office in Dakota. Graham then called on Holder, was shown these papers and talked the matter over with him.

There was some further correspondence between these parties, from which it appears that neither the notes nor the mortgage provided for attorneys' fees in the event of foreclosure or other legal proceedings to collect the debt; that Graham claimed to have been told by Douthett that the balance stated was not right, but the only specific objections suggested were to the attorneys' fees, an item of $6.25, for crying the sale, and the supposed charge of compound interest; that McMath insisted all payments had been properly credited by indorsement, and that computation from the figures given would certainly show that the balance stated did not include any compound interest. It also appears that, in his talk with Holder, Graham waived all objections to the account except to the item for attorneys' fees.

On the 4th of August McMath wrote to him as follows: "I am advised by Messrs. Holder, Milner & Co. that you

still decline to pay the balance due on the R. H. Douthett notes, numbers 102068–9, unless the item of $50, attorneys' fees, be dropped. My correspondents in Dakota, who foreclosed the mortgage, advised me that under the statute the attorneys' fees should be paid by the mortgagor, and it was on the strength of this that I included it in the amount to be collected.   However, rather than go to the trouble and expense of a tedious litigation, I will reduce the claim by the amount of the fee, and accept the balance, which is $77.36 plus four months' interest at eight per cent.   Send me a check for $79.42, and it will be accepted in full."   Thereupon appellee deposited that sum with Holder, Milner & Co., requesting them to advise appellant and get its receipt in full, but not to remit the money until the receipt came.   They did so, and the receipt came as follows: " Canton, Ohio, August 10, 1886.   Received of Hugh Graham, of Bloomington, Ill., $79.42, which is hereby accepted, as in full of his liability as surety on the notes of R. H. and Joseph Douthett to C. Aultman & Co., Nos. 102066, 102067, 102068 and 102069. J. C. McMath, Attorney for C. Aultman & Co."

On the 16th, McMath wrote to appellee: "I have to-day received from Holder, Milner & Co., a check for $79.42, which I had agreed to accept in full of your liability on the R. H. Douthett notes.   The amount was thus stated to you by some mistake, as you may easily see by reference to my previous letters, which stated the amount to be $127.36, with interest at eight per cent. from April 8th.   This is the net amount, leaving out the item of $50, attorneys' fees, to which you objected.   I do not know how I came to make such an error in the amount, but it was probably a mistake in writing the letter.   The difference is $51.33, which I will ask you to remit.   I regret the annoyance that my blunder will cause you, and hope that you will overlook it."   Mr. Graham declining to comply, this suit was brought Oct. 15th, in assumpsit on the common counts, with copy of the note attached, to recover the difference stated.   It was tried on the general issue and resulted in a verdict and judgment for the defendant.

There can be no doubt that the statement of "the balance" in McMath's letter of August 4th as $77.36 and interest from April 6th, and his offer to accept that sum as in full of appellee's liability, were made under a mistake of fact. The preceding correspondence and figures repeatedly given show it was really about $127.36 and interest. That is the precise amount stated in the first letter, and the trifling difference in the statement of a later one was due to an error in computation.

It appears that all this correspondence, except the letter last above quoted, was conducted on the part of appellant by Mr. Shanafelt, a clerk in its employ, and under the direction of McMath, who had charge of its collections. His explanation, which is entirely probable, is that he had memoranda relating to this claim containing statements of the balance both with and without the attorney's fee, which were respectively $177-.36 and $127.36; that when about to write to Mr. Graham after they had concluded not to insist on the attorney's fee, he looked for a memorandum, and seeing the one which stated the balance as $127.36 and supposing it to be the one including the fee, made the deduction from that amount and wrote accordingly. This supposition was a mistake as to the memorandum, and consequently, as to the fact it was supposed to represent.

But it is said on behalf of appellee that it was not a mutual mistake. He swears he did not know the actual balance; that it had been stated differently at different times; that he did not know the offer was made under any mistake; that from what he had been told by Douthett, he thought he was paying rather more than was really due and that he paid it in good faith and as being better than to litigate.

While he doubtless did not remember the exact balance without the fee, it is certain it had been clearly stated to him in writing, together with the data from which it was ascertained ; that though as stated it was not always the same, yet the difference was trifling and easily accounted for ; that the data were the same, and that the balance was never placed at less than $127.36. It would therefore be remarkable if he could

so far forget such a matter in so short a time as not to know that its statement as $77.36 was a mistake, though he did not know the extent or cause of it.

But this ignorance on his part and good faith in accepting the offer as made would not bind appellant, if the amount therein stated was clearly an error.    Mutuality in error is not essential to the right of correction.    To warrant the reformation of an agreement on the ground of mistake of fact, the mistake must be mutual.    The proposition supposes the existence of an agreement—that is, a mutual assent to all of its provisions; an actual meeting of minds in reference to them.    If either party could have them reformed or changed merely because he was mistaken as to some fact, however material to him, he could thus bind the other to terms he had never, in act or intention, accepted.    But if both were so mistaken and their agreement was based on a mutual misunderstanding of fact, then, though actually assented to as made, it would not be, in operation, what either contemplated, and therefore neither should be allowed to enforce it.   .

A mistake of fact is a supposition of the existence or nonexistence of some subject, quality, condition or relation, contrary to the fact.    It is no part of the agreement, nor does it appear therein or therefrom, either in terms, by reference or implication.    It may arise wholly within the mind of the party acting under it, without a suggestion of any falsehood or suppression of any truth by the other.    Thus acting of his own will, it must also be at his own risk.    The agreement itself is just what both understood and intended it to be.    It is sensible and consistent.    The only trouble is that one party, in consequence of a mistake wholly his own, in reference to some fact, finds that it does not and can not operate as he expected.    But the other was not acting under any mistake nor responsible for any.    Expecting to submit to its operation according to its meaning against himself, he should have the benefit of it in his favor.

But an error is materially different.    It is in the agreement or transaction itself, and yet so incompatible with it or with reason and the nature of things that the mind at once

perceives it could not have been assented to and ought not to be there. In this case the offer was expressed to be to "reduce the claim by the amount of the fee and accept the balance, which is $77.36 and interest." Now, when it is made to appear, either by the offer itself or by evidence *aliunde*, that the claim intended was $177.36 and the fee intended was $50, it is mathematically certain that the balance was not $77.36 but $127.36; and if appellant assented to the preceding terms it could not have assented to accept $77.36 and interest, though it so expressly stated. The statement of the balance was a pure error. So if A in terms agrees to pay B a certain sum as being the balance due upon a settlement of all their mutual claims, and it afterward appears that a proper claim of either party was omitted in the accounting, it is certain that the balance stated is not the amount contemplated by the agreement. And we believe it will be found in every case that the error is in the transaction itself and is shown to be such by the other parts of the agreement proved. It should therefore be corrected whenever discovered, if correction is practicable without injustice. For error, of itself, can never be a ground of right to him in whose favor it would operate if uncorrected. If other action innocently taken upon it would make its correction injurious, the rule which places the loss where one of two innocent parties must suffer, might justly forbid it. But, excepting such cases, correction can do no wrong. It would neither impose any new obligation nor extinguish any existing when the error occurred.

In this case nothing appears that should prevent it. Appellee has assumed no position in consequence of the error which would make its correction injurious. He would not be bound as acceptor of an offer to take $127.36 and interest, but the question of his liability and its amount would be open, to be determined by the facts, including the erroneous statement of the balance, the offer to accept that amount as in full, and the receipt given in pursuance of it.

In the view thus taken of what an error is, it is clearly immaterial to inquire into the cause of it, or which party committed it, or which would suffer by its operation, or

Aultman & Co. v. Graham.

whether it was unknown at the time to only one or to neither of the parties. Nor is the right of correction affected by the fact, if it be a fact, that the offer was made by way of compromise of a disputed claim. The error is in the amount stated, and for whatever purposes made, or however or by whomsoever the error was committed, and whether unknown to both or only one of the parties, the true amount should be substituted.

But the court below, at the request of defendant, gave to the jury the following instructions :

" You are instructed that if you believe from the evidence that a receipt in full was given by plaintiff on payment of $79.42, then said receipt should govern unless plaintiff overcomes the same and shows by a preponderance of the evidence, not only that the acceptance of $79.42 as a full payment was a mistake on its part, but that defendant knew that it was a mistake and sought to take advantage of the same.

" If you believe from the evidence that defendant Graham did not in fact know of his own knowledge how much was due on the notes, but knew the amount was in dispute between Douthett and plaintiff, and if you further believe that under such circumstances he accepted the offer of plaintiff's attorney to take $79.42 in full settlement in good faith as a compromise, then you are instructed that such settlement is binding and your verdict shall be for the defendant."

For the reasons above stated we hold that the giving of these instructions was error for which the judgment should be reversed and the cause remanded.

*Reversed and remanded.*